# UNITED STATES DISTRICT COURT NORTHERN
# DISTRICT OF ILLINOIS
# EASTERN DIVISION

KIM CROWDER, )
)
     Plaintiff, )
)   No. 16 C 11247
     v. )   Hon. Marvin E. Aspen
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
)
     Defendant. )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

     Plaintiff Kim Crowder brings this action pursuant to the Social Security Act ("the Act"),

42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the

Social Security Administration ("SSA").  Presently before us are Crowder and the

Commissioner's cross-motions for summary judgment.  For the following reasons, we deny

Crowder's motion for summary judgment and grant the Commissioner's motion for summary

judgment.

---

[1] On January 23, 2017, Nancy A. Berryhill succeeded Carolyn W. Colvin as Acting
Commissioner of Social Security.  Accordingly, we substitute Berryhill for Colvin pursuant to
Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

Crowder filed his application for Supplemental Security Income ("SSI") on November 3, 2011, claiming disability based on his history of seizures, epilepsy, and auditory hallucinations. (R. (Dkt. No. 8–1) at 108, 277–82.) The SSA denied the application on February 2, 2012. (*Id.* at 104–08.) On reconsideration, Crowder claimed to be disabled based on his diabetes. (*Id.* at 109.) The SSA denied his application on reconsideration on July 17, 2012. (*Id.* at 112–15.) Crowder then requested a hearing before an ALJ. (*Id.* at 118–20.)

A hearing was held on June 11, 2013. (*Id.* at 34–54.) The ALJ issued a decision on July 19, 2013, finding Crowder was not disabled. (*Id.* at 58–75.) Crowder appealed the ALJ's decision to the SSA Appeals Council of the Office of Disability Adjudication and Review. (*Id.* at 76.) On November 6, 2014, the Appeals Council vacated the hearing decision and remanded the case to another ALJ to clarify the extent of Crowder's mental impairments by obtaining additional evidence from a psychological expert and a vocational expert ("VE"), and to further consider all third-party statements. (*Id.* at 76–80.)

A second hearing was held on June 25, 2015. (*Id.* at 16–33.) The ALJ issued a decision on July 24, 2015, again finding Crowder was not disabled. (*Id.* at 81–103.) On October 14, 2016, the Appeals Council denied Crowder's request for review of the second ALJ decision, (*id.* at 1–6), making the ALJ's July 24, 2015 decision the final decision of the Commissioner of the SSA. 42 U.S.C. § 405(g); *see also Sims v. Apfel*, 530 U.S. 103, 107, 120 S. Ct. 2080, 2083 (2000) ("[I]f, as here, the Council denies the request for review, the ALJ's opinion becomes the final decision."). Crowder then filed his complaint on January 23, 2017 seeking judicial review of the Commissioner's decision.

## II.  FACTUAL BACKGROUND

### A.  Medical History

#### 1.  Consultative Examinations for DDS

Crowder saw several consultative psychological examiners for the Bureau of Disability Determination Services ("DDS") in conjunction with his SSI application.  Consultative psychological examiner Sharon Kobak, D.O., examined Crowder for DDS on May 22, 2007.[2] (R. at 444–49.)  Crowder stated he had seizures from a prior head injury he sustained after falling down stairs in the 1980s, he felt sad and depressed, and had attempted suicide, but had never been hospitalized for a psychiatric disorder.  (*Id.* at 444–45.)  Dr. Kobak diagnosed Crowder with dementia, depressive disorder, antisocial personality disorder, status post traumatic brain injury, and seizure disorder.  (*Id.* at 447.)

Consultative psychological examiner Robert Prescott, PhD, examined Crowder for DDS on December 23, 2011.  (*Id.* at 466–72.)  Crowder described a history of seizures and stated he was depressed, hears voices, and had attempted suicide, but had not received any mental health treatment.  (*Id.* at 466–68.)  Crowder also reported brain damage from falling off a bicycle. (*Id.* at 467.)  Dr. Prescott observed that Crowder's statements about his previous drug and alcohol use and legal troubles differed from those he provided to previous examiners, and that Crowder "seemed to be making limited effort on the cognitive portion of the [examination] and this is believed not to be accurate."  (*Id.* at 471.)  Dr. Prescott diagnosed Crowder with a cognitive disorder due to head injury, depressive disorder, antisocial activities, unknown alcohol abuse, and narcotic abuse.  (*Id.* at 471.)

---

[2] The medical evidence in the record from 2007 and 2008 relates to a previous application for social security benefits filed by Crowder.  The details of that prior application are unclear, but it is referenced in the ALJ's decisions and reported in an SSA Field Officer Report. (R. at 87, 93, 301–303.)

In addition, consultative psychological examiner Patricia Morrin, PsyD, examined Crowder for DDS on December 24, 2014, after the Appeals Council remanded Crowder's claim and ordered the ALJ to obtain more evidence regarding Crowder's mental impairments. (*Id.* at 632–42.) Dr. Morrin found that, with regard to his physical impairments, Crowder complained only of leg cramps and headaches. (*Id.* at 636.) Crowder stated he sometimes felt lonely and depressed and had attempted suicide, but denied any treatment or hospitalizations for mental health reasons. (*Id.* at 633, 637.) Dr. Morrin observed that Crowder's "fund of information and abstract thinking skills were low and he could not perform computations. He did not report any auditory or visual hallucinations. His mood and affect was blunted and moderately depressed." (*Id.* at 634.) Dr. Morrin also administered the Wechsler Adult Intelligence Scale-IV ("WAIS"), and Crowder scored a Full Score IQ of 62. (*Id.* at 635–36.) However, Dr. Morrin believed the test scores were "not representative of the claimant's level of functioning" because Crowder had difficulty seeing the test, and she suspected his visual problems and previous head injury likely lowered the score. (*Id.* at 635, 637.) After examination, Dr. Morrin concluded Crowder has moderate restrictions in work-related mental activities and ability to interact with others, and mild restriction in his ability to respond to usual work situations and to changes in a routine work setting. (*Id.* at 639–40.)

Crowder also saw consultative physical examiners for DDS as part of his SSI application. Consulting physical examiner Kenneth Gong, M.D., examined Crowder for DDS on May 22, 2007. (*Id.* at 450–60.) Crowder reported that he suffered a head injury in the 1980s after falling off of a bicycle. (*Id.* at 450.) Dr. Gong found Crowder appeared to be physically unremarkable and diagnosed Crowder with seizure disorder and "allegations of mental illness." (*Id.* at 451–52.) Consulting physical examiner Norbert De Biase, M.D., examined Crowder for

DDS on December 23, 2011.  (*Id.* at 475–85.)  Crowder reported having seizures and blurry vision.  (*Id.* at 475–76.)  Dr. De Biase concluded Crowder had full range of motion in all joints and normal muscle strength, and diagnosed Crowder with seizures, impaired vision, and "hearing voices."  (*Id.* at 477–78.)  Consulting ophthalmologist David Hillman, M.D., examined Crowder on January 13, 2012, finding Crowder had right eye vision of 20/200, correctable to 20/40, and left eye vision of 20/40.  (*Id.* at 500–06.)

2. <u>State Agency RFC Assessments</u>

In addition to consultative examinations, several state agency consulting physicians reviewed Crowder's application materials and medical records for DDS to determine his physical Residual Functional Capacity ("RFC").  State agency physical consultant David Bitzer, M.D., completed a Physical RFC Assessment for DDS on January 31, 2012.  (*Id.* at 507–14.)  Dr. Bitzer concluded Crowder had no exertional limitations.  (*Id.* at 508–11.)  State agency physical consultant Sumanta Mitra, M.D., also completed a Physical RFC Assessment for DDS on July 5, 2013.  (*Id.* at 613–20.)  Dr. Mitra concluded Crowder could occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, could stand or walk for about six hours in an eight-hour workday, could sit for a total of 6 hours in an 8-hour workday, could occasionally climb ladders, and should avoid concentrated exposure to hazards such as machinery and heights.  (*Id.* at 614–17.)

In addition, state agency consulting psychologists reviewed Crowder's records for DDS to determine his mental RFC.  State agency psychological consultant Michael Schneider, PhD, completed a Psychiatric Review Technique and Mental RFC Assessment on January 12, 2012.  (*Id.* at 486–99.)  Dr. Schneider stated there was insufficient evidence in Crowder's file to make a finding because he was not given the entire longitudinal record at the time of his review.

(*Id.* at 486, 498.)  Subsequently, state agency psychological consultant Joseph Mehr, PhD, completed a Psychiatric Review Technique and Mental RFC Assessment on June 26, 2012. (*Id.* at 595–612.)  Dr. Mehr observed that during a telephone conversation regarding his claim, Crowder "denie[d] prior symptoms of psychiatric issues."  (*Id.* at 597, 611.)  Dr. Mehr found Crowder "has the cognitive ability to remember general work procedures, and to understand and remember instructions for simple tasks of a routine and repetitive type."  (*Id.* at 597.)  Dr. Mehr also rated Crowder's functional limitations for Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.09 (Substance Addiction Disorders), which are set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 and are used to determine whether the claimant's impairment meets or equals the criteria of a listed impairment.  (*Id.* at 599–610.)  Dr. Mehr concluded that Crowder has moderate restrictions of daily living activities, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation, and thus did not meet the requirements for Listings 12.02, 12.04, or 12.09.  (*Id.* at 609.)

### 3. Treatment Records

Although the record does not contain treatment records for Crowder's mental impairments, Crowder's medical records from 2003 to 2015 indicate he sought treatment for other physical impairments.  Crowder's medical records from 2003 to 2006 indicate various ailments, such as complaints of nasal congestion and back pain.  (*Id.* at 398–443.)  From 2012–2015, Crowder visited several hospitals and received treatment for various physical symptoms.  Crowder was admitted to Holy Cross Hospital on March 18, 2012 complaining of abdominal pain.  (*Id.* at 515–50.)  Crowder reported a history of hypertension, hypothyroid disorder, and alcohol abuse.  (*Id.* at 516.)  Crowder's records from the hospitalization indicate he

was depressed, and he was diagnosed with acute pancreatitis and alcohol abuse. (*Id.* at 525, 539.)

Crowder was admitted to Stroger Hospital on April 4, 2012, complaining of weakness and fatigue after his mother found him lying on the floor, too weak to move. (*Id.* at 556.) Crowder did not report any psychological difficulties or a history of seizures. (*Id.* at 556–59.) Crowder was diagnosed with Type Two diabetes and diabetic ketoacidosis, and was discharged on April 4, 2012. (*Id.* at 583.) At a follow-up appointment for outpatient diabetes management on March 22, 2013, Crowder again reported no psychological difficulties. (*Id.* at 627–28.) Crowder was admitted to Rush University Medical Center on May 15, 2015 complaining of weakness and dizziness. (*Id.* at 682–718.) Crowder was diagnosed with diabetic ketoacidosis, dehydration, and depression. (*Id.* at 682, 692.) Crowder received insulin treatment and fluids. (*Id.* at 659.) Finally, the record indicates that Crowder saw Dr. Carl Bell on April 22, 2015, and that Dr. Bell prescribed him medication for his depression. (*Id.* at 677–79.)

4. Third Party Statements

Third party questionnaires and statements from Crowder's family and friends concerning Crowder's physical and mental capabilities are also part of the record in support of his SSI application.[3] Seizure questionnaires submitted in 2011 by Crowder's family and friends suggest that Crowder experienced one seizure per month. (*Id.* at 389–91.) Furthermore, Alexander Coleman, referred to as both Crowder's friend and uncle in the record, (*id.* at 95), gave a third-party statement on November 28, 2011 in support of Crowder's SSI application, claiming Crowder has a learning disability, is unable to read, has memory problems, and has difficulty

---

[3] On remand, the Appeals Council directed the ALJ to consider such third-party statements in order to show the consistency of the medical evidence and to establish severity of an individual's impairments. (R. at 77.)

performing some personal care.  (*Id.* at 349–57.)  Coleman also stated Crowder did not cook for

himself, but he can do household chores, yard work, and go to the store with supervision.

(*Id.* at 351.)  Coleman stated Crowder has significant memory loss, experiences seizures

regularly, talks to himself, and hears voices.  (*Id.* at 356.)

    5.  <u>CDI Report of Investigation</u>

   Finally, the record contains a Report of Investigation from the Chicago Cooperative

Disability Investigations ("CDI") Unit from January 16, 2008.  (*Id.* at 250–76.)  While

investigating Crowder's prior 2007 application for disability benefits, DDS referred Crowder to

the Chicago CDI Unit on July 16, 2007.  (*Id.* at 253.)  DDS suspected Crowder of malingering

because his medical records from the state Department of Corrections did not mention his

allegations of seizures and mental difficulties, and there was no medical evidence of treatment

for those impairments.  (*Id.* at 251, 253.)  The CDI Unit found that Crowder gave the police a

false name when he was arrested on December 11, 2007.  (*Id.* at 254.)  The arrest report

indicated Crowder was not carrying any medication, and that he told the officers he had no

mental or physical disabilities.  (*Id.*)  The CDI report also indicated Crowder was previously

arrested on October 13, 2006 and June 17, 2007, and both times Crowder told officers he did not

have any medical or mental impairment and was not taking any medication.  (*Id.* at 255.)  The

CDI Unit found that the arrest reports contradicted Crowder's claims he could not remember

things, concentrate, leave the house alone, handle money, and was afraid of people.

(*Id.* at 254–55.)

### B. Hearing Testimony

#### 1. Plaintiff's Testimony

Crowder testified at his first hearing before an ALJ on June 11, 2013. (*Id.* at 36–54.)

Crowder testified he had never worked because he "was kind of sick." (*Id.* at 40–41.) Crowder

stated his seizures prevent him from working, and the last time he had a seizure was two weeks

prior to the hearing. (*Id.* at 44.) Crowder told the ALJ he takes medication for his seizures, but

did not bring the medication to the hearing and could not provide the medication's name.

(*Id.* at 47–48.) Crowder stated that he helps his mother around the house by washing dishes,

vacuuming, doing laundry, cooking, and taking out the garbage. (*Id.* at 48–49.) Crowder further

testified that he has friends and goes to church. (*Id.* at 52–53.) Crowder testified he had stopped

drinking alcohol. (*Id.* at 49.) Crowder stated he had not received any treatment from a

psychiatrist or a psychologist. (*Id.* at 49.)

Crowder testified again at his second hearing before an ALJ on June 25, 2015.

(*Id.* at 18–28.) Crowder stated he was unable to work because of his pancreatitis, diabetes, and

depression. (*Id.* at 19, 22, 24.) Crowder testified that he was prescribed a cane because of pain

in his leg, but he forgot to bring it to the hearing. (*Id.* at 25.) Crowder also stated he began

receiving psychiatric treatment on April 22, 2015 because he sees things, hears voices, thinks of

killing himself, and is depressed. (*Id.* at 23–24, 26–27.) Crowder testified that he does not have

friends to visit. (*Id.* at 25, 27.) At the conclusion of the hearing, the ALJ asked Crowder if there

was anything else he would like to bring to the ALJ's attention and gave Crowder additional time

to provide updated medical evidence after the hearing. (*Id.* at 18, 33.)

2. <u>Vocational Expert's Testimony</u>

The VE, Ms. Tucker, testified at the hearing on June 25, 2015. (*Id.* at 28–33.) The ALJ asked the VE to consider an individual with Crowder's age, education, and work background who is limited to a reduced range of light work involving simple, routine, and repetitive tasks not at production rate pace; limited to simple, work-related decisions; limited to lifting 20 pounds occasionally and 10 pounds frequently; must have the option of sitting for 5 minutes after every 30 minutes of standing or walking; and can never be exposed to unprotected heights or moving mechanical parts. (*Id.* at 30.) In response to the hypothetical, the VE testified such a person could perform work as a cleaner/polisher, of which there are 25,000 positions nationally, a laundry aid, of which there are 95,000 positions nationally, and a small parts assembler, of which there are 30,000 positions nationally. (*Id.* at 31.)

**C. The ALJ's Decision**

To determine whether a claimant is disabled under the Act, the ALJ conducts a five-step inquiry. 20 C.F.R. § 404.1520(a). The ALJ must determine whether: (1) the claimant is performing substantial gainful activity; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment(s) meets or equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) the claimant's impairments prevent him from doing past relevant work; and (5) the claimant is able to perform any other work considering his RFC, age, education, and work experience. *Id.* In between steps three and four, the ALJ must determine the claimant's RFC, which is an individual's ability to do physical and mental work activities despite limitations from his impairments. *Id.* § 416.920(e). The ALJ must consider all of the claimant's impairments when determining his RFC. *Id.*

The ALJ issued a final decision on July 7, 2015. (R. at 81–103.) Following the five-step inquiry, the ALJ concluded Crowder was not disabled. (*Id.* at 84.) At Step One, the ALJ found Crowder has not engaged in substantial gainful activity since November 1, 2011. (*Id.* at 86.) At Step Two, the ALJ found Crowder has the following severe impairments: pancreatitis, diabetes, hypertension, a history of seizure disorder, a cognitive disorder, adult antisocial behavior, depression, and substance addiction disorder. (*Id.*)

At Step Three, the ALJ found Crowder does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ considered whether the severity of Crowder's mental impairments meets or equals the criteria of Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), 12.05 (Intellectual Disability), and 12.09 (Substance Addiction Disorders).[4] (*Id.* at 91.) 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ assessed the severity of Crowder's impairments using the Listings' Paragraph B criteria (Paragraph D criteria for Listing 12.05), which determines Crowder's functional limitations in several areas. (*Id.*) 20 C.F.R. §§ 404.1520a(b)(2); 20 C.F.R. Pt. 404, Subpt. P, App. 1. In considering the Paragraph B criteria, the ALJ found Crowder has moderate restrictions in daily living activities; concentration, persistence, or pace; and social functioning. (R. at 91.) The ALJ observed that the record shows no episodes of decompensation. (*Id.*) The ALJ therefore concluded that since Crowder's mental impairments do not cause at least two marked limitations, the Paragraph B

---

[4] On September 36, 2016, the SSA published new rules updating how mental health conditions are evaluated, which changed the Listing criteria for Listings 12.02 and 12.04. These updates went into effect on January 17, 2017, which post-dates the ALJ's decision. Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138–01, 2016 WL 5341732, at * 66138 (Sept. 26, 2016) ("The prior rules will continue to apply until the effective date of these final rules. When the final rules become effective [on January 17, 2017], we will apply them to new applications filed on or after the effective date of the rules, and to claims that are pending on or after the effective date.").

criteria of Listings 12.02, 12.04, and 12.09, and the Paragraph D listings for Listing 12.05 were

not satisfied.  (*Id.*)  The ALJ found Crowder did not satisfy the Paragraph C criteria for

Listings 12.02, 12.04, and 12.09, because he experienced no episodes of decompensation.

(*Id.* at 92.)  Finally, the ALJ determined Crowder did not meet the Listing 12.05 Paragraph C

requirements because he does not have a valid verbal, performance, or full scale WAIS score

of 60–70.  (*Id.*)

Before moving on to Step Four, the ALJ considered the entire record and determined

Crowder's RFC.  (*Id.*)  The ALJ determined Crowder can "perform light work . . . can perform

simple, routine, and repetitive tasks but not at a production rate pace; and is limited to simple,

work-related decisions."  (*Id.*) The ALJ found that Crowder's medically determinable

impairments could reasonably be expected to cause the alleged symptoms.  (*Id.* at 93.)  However,

the ALJ found that objective medical evidence does not establish "the presence of any

impairment or combination of impairments that could reasonably be expected to result in pain or

other symptoms of such severity or frequency as to preclude all work."  (*Id.* at 95.)  The ALJ

therefore concluded that Crowder's statements about the intensity, persistence, and limiting

effects of these symptoms are not supported by the record.  (*Id.* at 93.)

Next, at Step Four, the ALJ determined that Crowder has no past relevant work.

(*Id.* at 96.)  Finally, based on the VE's testimony from the June 25, 2015 hearing, at Step Five

the ALJ determined that, considering Crowder's "age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that

the claimant can perform."  (*Id.*)  The ALJ ultimately determined that Crowder has not been

disabled since November 1, 2011.  (*Id.* at 97.)

## LEGAL STANDARD

Judicial review of the Commissioner's decision arises under 42 U.S.C. § 405(g).  We will

uphold the Commissioner's decision if it is supported by substantial evidence.

42 U.S.C. § 405(g); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citing *Rohan v. Chater*,

98 F.3d 966, 970 (7th Cir. 1996)).  Because the ALJ's decision is the final decision of the

Commissioner in this case, we determine whether substantial evidence supports the ALJ's

decision.  *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).  Substantial evidence is

evidence "a reasonable mind might accept as adequate to support a conclusion."

*Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016) (internal quotation marks omitted) (quoting

*Pepper v. Colvin*, 712 F.3d 351, 361 (7th Cir. 2013)).  In doing so, we review the entire record,

but will not displace the ALJ's judgment by reweighing facts or by making independent

credibility determinations.  *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Clifford*,

227 F.3d at 869.  If the ALJ's decision does not meet the minimum requirements because the

decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review,"

the court will reverse and remand the decision.  *Steele v. Barnhart*, 290 F.3d 936, 940

(7th Cir. 2002).  Reversing the Commissioner's decision and awarding a claimant benefits

without remand is appropriate only where "all factual issues have been resolved and 'the record

can yield but one supportable conclusion.'"  *Briscoe v. Barnhart*, 425 F.3d 345, 355

(7th Cir. 2005) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).  On the other

hand, if reasonable minds could differ regarding whether the plaintiff is disabled, we must affirm

ALJ's decision so long as it adequately supported.  *Elder*, 529 F.3d at 413 (citing

*Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

# ANALYSIS

## I.  MEDICAL OPINIONS

Crowder first argues that the ALJ failed to adequately consider the medical opinions of his examining physicians regarding his mental impairments,[5] or to articulate the weight given to those opinions the ALJ did consider.  (Pl.'s Br. at 11–12.)  An ALJ must determine what weight to give the opinions of non-treating physicians.[6]  *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).  When considering the opinion of a non-treating source, the ALJ must evaluate the opinion's weight in light of the factors listed in 20 C.F.R. § 404.1527(c), which include "the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion."  *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010) (quoting *Larson*, 615 F.3d at 751).

Contrary to Crowder's assertion that the ALJ did not consider nor weigh the medical opinions of any examining physician, (Pl.'s Br. at 11), the ALJ considered the opinions of examining doctors Kobak, Prescott, and Morrin regarding Crowder's mental impairments.  (R. at 87–90.)  The ALJ assigned great weight to Dr. Morrin's opinions because they were based on her review of the entire longitudinal record and her examination of the client.  (*Id.* at 89.)  Dr. Morrin examined Crowder after the Appeals Council ordered the ALJ to obtain additional evidence regarding Crowder's mental impairments on remand.  (*Id.* at 78.)  Dr. Morrin found after examination that Crowder has moderate limitations in his ability to understand simple

---

[5] Crowder appears to challenge only the ALJ's determinations regarding the severity of and functional limitations imposed by his mental impairments.  (Pl.'s Br. (Dkt. No. 9–1) at 10–15.)
[6] Crowder also argues that the ALJ failed to "articulate reasons for rejecting the opinion of the treating doctors," but Crowder does not identify any treating physician and the record indicates that he did not have a treating physician.  (Pl.'s Br. at 12.)

instructions, make judgments on simple work related decisions, understand and remember complex instructions, carry out complex instructions, and make judgments on complex instructions. (*Id.* at 639.) Dr. Morrin further found that Crowder has moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers, and is mildly limited in his ability to respond appropriately to work situations and changes in work settings. (*Id.* at 640.) Dr. Morrin administered a WAIS test on which Crowder scored a 62, in the extremely low range of intellectual functioning, but discounted his score based on his perceived inability to see the test well, prior head injuries, and further observed that Crowder was able to remember four digits backwards during the administration of the WAIS test despite purportedly being unable to do so at multiple previous examinations. (*Id.* at 636.)

While the ALJ explicitly stated the weight given to Dr. Morrin's opinion, he failed to do so when discussing Drs. Kobak and Prescott's opinions. That error is harmless, however, as neither of their medical opinions contradicts Dr. Morrin's opinion or the ALJ's findings. *Schomas v. Colvin*, 732 F.3d 702, 707–8 (7th Cir. 2013) (citations omitted) ("But this kind of error is subject to harmless-error review, and we will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same."); *cf. Scheck v. Barnhart*, 357 F.3d 697, 700–01 (7th Cir. 2004) (Finding the ALJ was not required to articulate her reasons for adopting state agency physicians' determination that the claimant was not disabled where that determination was uncontradicted by any other medical evidence). Prior to the Appeals Council's remand and Dr. Morrin's examination, Dr. Kobak examined Crowder and diagnosed him with depressive disorder, dementia, antisocial personality disorder, and seizure disorder. (*Id.* at 447.) Dr. Kobak observed that Crowder is depressed, has some memory impairment, and is unable to do simple calculations. (*Id.* at 446–47.) Dr. Kobak

did not explicitly state the degree to which Crowder's impairments limited his functioning, but nothing in Dr. Kobak's opinion undermines the ALJ's finding based on Dr. Morrin's opinion that Crowder has no marked limitations. Also prior to the Appeals Council's remand, Dr. Prescott diagnosed Crowder with a cognitive disorder and depressive disorder. (*Id.* at 471.) Dr. Prescott observed that Crowder's abstract thinking was poor and that he was unable to do simple arithmetic, but also that he made a limited effort during his cognitive examination. (*Id.*) Dr. Prescott also observed that, with regard to his daily activities, Crowder is able to use public transportation and can make trips to the store by himself. (*Id.* at 470.) Dr. Prescott made no finding as to the impact of Crowder's depression on his functioning. (*Id.* at 470–71.) Further, Dr. Prescott made no specific finding as to whether Crowder's depressive and cognitive disorders resulted in marked restrictions in his daily living, social functioning, or his concentration, persistence or pace. (*Id.*) Given the ALJ's reliance on Dr. Morrin's recent and thorough examination of Crowder, which is uncontradicted by any other examining physician, we find that the ALJ's failure to explicitly state the weight he assigned to Drs. Kobak and Prescott's opinions was harmless error.

## II. THE ALJ'S RFC DETERMINATION

### A. The ALJ's Treatment of Medical Sources

Crowder argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to explicitly state the weight assigned to the examining physician's medical opinions. An ALJ "must consider 'opinions from medical sources' in determining the claimant's residual functional capacity. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013) (quoting 20 C.F.R. § 404.1572(d)). As explained above, the ALJ erred in failing to state the weight assigned to Drs. Kobak and Prescott's medical opinions, but that error was

harmless.  In addition to considering the examining physician's opinions, the ALJ explicitly

stated the weights assigned to all state agency consultants' RFC assessments.  The ALJ assigned

"limited weight" to Dr. Bitzer's and "some weight" to Dr. Mitra's opinions because they did not

fully account for Crowder's physical limitations.  (R. at 94.)  The ALJ assigned Dr. Schneider's

opinion "limited weight" because Dr. Schneider did not have the entire longitudinal record at the

time of his review.  (*Id.* at 95.)

The ALJ assigned "great weight" to Dr. Mehr's opinion because it is "consistent with the

evidence of record and [Crowder's] testimony at hearing."  (*Id.*)  On reconsideration of

Crowder's November 3, 2011 application for benefits, Dr. Mehr examined Crowder's medical

history and completed an RFC.  (*Id.* at 595–611.)  Dr. Mehr spoke with Crowder and observed

Crowder "denie[d] prior symptoms of psychiatric issues."  (*Id.* at 597.)  Dr. Mehr found Crowder

"has the cognitive ability to remember general work procedures, and to understand and

remember instructions for simple tasks of a routine and repetitive type."  (*Id.* at 597.)   Dr. Mehr

concluded that Crowder has moderate restrictions of daily living activities, mild difficulties in

maintaining social functioning, moderate difficulties in maintaining concentration, persistence,

or pace, and no episodes of decompensation.  (*Id.* at 609.)  We find that the ALJ adequately

articulated his analysis in considering medical source opinions, and that his RFC was supported

by substantial evidence.  *See Buckhanon v. Astrue*, 368 Fed. App'x 674, 679 (7th Cir. 2010)

("The ALJ expressly relied upon the medical judgment of the state-agency consultants, and their

uncontradicted opinions constitute substantial evidence." (citing *Scheck*, 357 F.3d at 700).

### B.  The ALJ's Credibility Determination

Crowder argues that in evaluating the credibility of his statements regarding the limiting

effects of his symptoms, the ALJ erred by considering the CDI report and Crowder's failure to

seek treatment for his mental impairments. (Pl.'s Br. at 11.) As part of the ALJ's determination of Crowder's RFC, the ALJ followed a two-step process in considering Crowder's symptoms in which he: (1) determined whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and (2) evaluated the intensity, persistence, and limiting effects of the symptoms to determine how the claimant's functioning is limited. (R. at 93.) SSR 16–3p, 2016 WL 1119029, at *2 (March 16, 2016).[7] In doing so, the ALJ is responsible for weighing the evidence, and he may make appropriate inferences from the record. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). The ALJ is not to consider the claimant's character, but instead "consider medical and other evidence to evaluate the intensity and persistence of symptoms to determine how the individual's symptom limit capacity for work." SSR 16–3p, 2016 WL 1119029, at *1 n.1 (March 16, 2016). "So long as an ALJ gives specific reasons supported by the record," we will not overturn an ALJ's determination pursuant to SSR 16–3p unless it is "patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation omitted). This is an "extremely deferential" standard. *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).

While Crowder does not raise the issue on appeal, we must address whether the ALJ erred in considering Crowder's character when determining the severity of his symptoms. SSR 16–3p eliminated the use of the term "credibility," and clarified that ALJs ought not to rely on character judgments to determine the severity of a claimant's impairments. 2016 WL 1119029, at *1 n.1 (March 16, 2016). Here, the ALJ clearly stated that he did not find

---

[7] At the time of the ALJ's decision, SSR 96–7p governed this evaluation. SSR 96–7p was superseded by SSR 16–3p. 2016 WL 1119029 (March 16, 2016). We apply SSR 16–3p here because "the new regulation is a clarification of, not a change to, existing law." *Lawson v. Berryhill*, No. 15 C 5415, 2017 WL 2480705, at *2 (N.D. Ill. June 7, 2017); *see also Hadberg v. Colvin*, No. 14 C 887, 2016 WL 1660493, at *6 (N.D. Ill. Apr. 27, 2016) (same); *Qualls v. Colvin*, No. 14 CV 2526, 2016 WL 1392320, at *6 (N.D. Ill. Apr. 8, 2016) (same).

the Crowder's statement's regarding the intensity, persistence and limited effects of his symptoms to be credible. (R. at 93.) In addition to considering Crowder's arguments regarding the sufficiency of the ALJ's RFC determination, we must also determine whether the ALJ's "credibility" determinations were erroneously based on an evaluation of Crowder's character for truthfulness, or properly based on the consistency of Crowder's statements with the evidence. *See Srp v. Colvin*, 15 C 3006, 2016 WL 4487831, at \*6 (N.D. Ill. Aug. 25, 2016).

First, Crowder argues the ALJ relied on the CDI report over the opinions of examining physicians. (Pl.'s Br. at 7, 11.) There is no evidence the ALJ assigned more weight to the CDI report than to the medical source evidence. However, the ALJ found that Crowder's statements regarding the severity of his symptoms were incredible because they were contradicted by the CDI report. (R. at 93.) For example, the ALJ observed that Crowder denied having any mental impairment upon arrest, which casts doubt on Crowder's statements to consultative examiners about his mental impairments. (*Id.* at 93, 254–57, 556–59.) The ALJ also observed that the CDI report revealed Crowder had given the police a false name upon arrest, which the ALJ found indicated Crowder has a higher level of cognitive functioning than alleged. (*Id.*)

Second, Crowder argues that the ALJ improperly evaluated his failure to seek treatment for his mental impairments. The ALJ found Crowder's statements regarding the severity of his symptoms incredible because he failed to seek any mental health treatment until April 2015 even though he testified at the June 25, 2015 hearing that he has been unable to work in part because he hears voices and has thoughts of suicide. (R. 94.) Based on that credibility determination, the ALJ discounted Crowder's statements regarding the intensity of his symptoms. (R. at 94.)

We find that the ALJ's determinations were not based on improper character inferences. Rather, the ALJ was permitted to consider the consistency of Crowder's statements regarding the

severity of his symptoms, as well as whether Crowder's statements are consistent with "other evidence" such as the CDI report. SSR 16–3p, 2016 WL 1119029, at *8–9. However, the ALJ must consider the possible explanations for the claimant's inconsistent statements and failure to seek treatment before drawing any negative inferences. *Id.*; *see Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("But the ALJ may not draw any inferences 'about a claimant's condition from his failure [to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)); *Quinones v. Colvin*, No. 15 C 6072, 2017 WL 337993, at *4 (N.D. Ill. Jan. 23, 2017) (ALJ erred by drawing negative inference from claimant's inconsistent statements regarding the frequency of her panic attacks without considering any possible explanation for those inconsistencies). The ALJ erred in failing to consider such explanations here.

However, we again find the ALJ's errors were harmless. First, the ALJ's conclusion that the Crowder's statements to the police were inconsistent with his statements regarding the alleged severity of his cognitive impairments is consistent with the medical opinions of Drs. Morrin and Prescott who both questioned Crowder's efforts during cognitive testing. (*Id.* at 470–71, 636.) Second, the ALJ's consideration of Crowder's mental impairments is also consistent with Dr. Morrin's examination, in which she found that Crowder's mental impairments resulted in moderate, but not marked, limitations. (*Id.* at 632–41.) Finally, despite discounting Crowder's statements regarding the severity of his symptoms without exploring explanations for Crowder's inconsistent statements, the ALJ still crafted an RFC that was based on the uncontradicted medical opinions of Crowder's examining physicians and the state agency consultants that incorporated Crowder's "significant limitations based on his depression, social

problems, and cognitive deficits." (*Id.* at 94–95.) Accordingly, we find the ALJ's failure to consider explanations for Crowder's inconsistent statements was harmless.

## III. WHETHER THE ALJ PROPERLY DEVELOPED THE RECORD

Crowder argues the ALJ failed to fully and fairly develop the record because the ALJ had an obligation to gather more evidence. (Pl.'s Br. at 13–14.) "While a claimant bears the burden of proving disability, the ALJ . . . has a duty to develop a full and fair record." *Nelms*, 553 F.3d at 1098 (7th Cir. 2009); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Because Crowder was represented by counsel, the ALJ was free to assume that Crowder had presented his best case for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007) (citation omitted). The ALJ was required by the Appeals Council to further develop the record to assess Crowder's mental impairments, and complied with that order by obtaining Dr. Morrin's psychological examination and the VE's testimony. (R. at 77–78.) The ALJ also allowed Crowder additional time to provide updated medical evidence after the hearing, which Crowder did not do. (*Id.* at 18, 33.). *See Orienti v. Astrue*, 958 F. Supp. 2d 961, 974 (N.D. Ill. 2013) (finding the ALJ fulfilled his duty to develop the record where he left the record open for the claimant to submit additional medical evidence after the claimant's hearing). While Crowder claims the ALJ should have solicited more medical opinions to explain the allegedly questionable WAIS test or any other questionable medical opinions, Crowder did not request the ALJ do so or submit any additional opinions explaining those results. Because Crowder was represented, the appropriate inference is that Crowder did not believe such additional opinions would help his case for benefits. *Ware v. Colvin*, No. 14 C 4458, 2016 WL 2851562, at *6 (N.D. Ill. May 16, 2016) (internal quotation marks omitted) (quoting *Buckhanon*, 368 Fed. App'x at 679); *Cf. Nelms*,

553 F.3d at 1098 (Accordingly, 'a significant omission is usually required before this court will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly'" (quoting *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994)).  We therefore find that the ALJ did not fail to fully develop the record.

## IV.  THE ALJ'S STEP FIVE FINDING

Crowder claims the ALJ's Step Five finding was improper because the hypothetical questions the ALJ posed to the VE did not account for his "illiteracy, inability to perform simple math, decreased cognitive functioning, . . . or unintelligible communication." (Pl.'s Br. at 14–15.)  An ALJ's hypothetical questions "must include all limitations supported by medical evidence in the record."  *Simila v. Astrue*, 573 F.3d 503, 520 (7th Cir. 2009) (citation omitted).  While Crowder testified he can hardly read or write, no medical evidence supports his contention that he is illiterate.  (R. at 28.)  Dr. Prescott observed that Crowder mumbled but was understandable during 70 percent of his examination, Dr. Morrin observed only that Crowder spoke in a mumbled manner, and Dr. Kobak observed that Crowder's speech was coherent. (*Id.* at 446, 468, 637.) Moreover, Crowder was able to testify at both of his hearings. (*Id.* at 16–54.) That Crowder's communication is "unintelligible" is thus unsupported by the record, and the ALJ did not err in failing to include that qualification in his hypothetical.  As for Crowder's limited arithmetic abilities, both examining physicians Prescott and Morrin noted his inability to do simple math, but both also questioned his effort during the cognitive examination. (*Id.* at 471, 634, 636.)  The medical evidence thus did not require the ALJ to specifically include those limitations in his hypothetical.  Moreover, Crowder has a ninth grade education, and the ALJ specifically required the VE to consider Crowder's level of education.  (*Id.* at 30.)  *See Coots v. Astrue*, No. 08 C 2191, 2009 WL 3097433, at *12 (N.D. Ill. Sept. 9, 2011) (finding the

22

ALJ did not fail to include claimant's reading, writing, and arithmetic abilities in the VE's hypotheticals where the ALJ included the claimant's second grade education in the hypothetical). With regard to Crowder's decreased cognitive functioning, the ALJ expressly included Crowder's cognitive abilities in his RFC, which we have held is supported by substantial evidence. We therefore find that the ALJ's hypotheticals do not constitute error, and his Step Five finding is supported by substantial evidence.

## CONCLUSION

For the foregoing reasons, we grant the Commissioner's motion for summary judgment and deny Crowder's motion for summary judgment. It is so ordered.

_____
Honorable Marvin E. Aspen
United States District Judge

Dated: August 1, 2017
      Chicago, Illinois